NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2740
_____

UNITED STATES OF AMERICA

v.

YASHEAM WASHINGTON,
a/k/a Yasheem Washington,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-19-cr-00291-001)
District Judge: Honorable Harvey Bartle III

_____

ARGUED: October 3, 2022

Before: CHAGARES, *Chief Judge*, SHWARTZ, and SCIRICA, *Circuit Judges.*

(Filed: January 9, 2023)

Christy Martin [ARGUED]
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant*

Erica D. Kivitz
Robert A. Zauzmer [ARGUED]
Office of the United States Attorney
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106
*Counsel for Appellee*

———————————

OPINION[*]

———————————

**SCIRICA**, *Circuit Judge*

The case arises out of the trial, conviction, and sentencing of Yasheam
Washington for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[1]
Washington appeals the District Court's finding that he knowingly and voluntarily
waived his right to counsel, the District Court's order that he be physically restrained at
trial, and several issues related to his sentencing. We find no error in the District Court's
finding that Washington waived the right to counsel and hold that any error in ordering
Washington restrained at trial was harmless. Because we agree with Washington and the
Government that one of Washington's prior convictions is not a "crime of violence"
under U.S.S.G. § 2K2.1, we affirm his conviction, vacate his sentence, and remand to the

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] On November 5, 2018, Philadelphia Police Officers encountered Washington sleeping
in his vehicle and observed a baggie of marijuana on the center console. The officers
knocked on the window and awoke Washington, who partially opened the window. The
officers smelled the odor of burnt marijuana and directed Washington to exit the vehicle.
Washington refused. When officers opened the door to remove Washington, he resisted.
As Washington leaned further inside the vehicle during the struggle, the officers observed
a pistol on the seat beneath Washington. Once Washington was placed under arrest, the
officers secured the firearm. Washington was charged with possession of a firearm by a
felon in violation of 18 U.S.C. § 922(g)(1).

District Court for resentencing.

I.

On the eve of Washington's first trial in this case, Washington sought to substitute his counsel. The District Court determined Washington's motion to substitute counsel was made in bad faith to delay trial and gave Washington the choice of continuing with his current counsel or representing himself. Washington participated in a *Faretta* colloquy with the District Court, but the District Court ordered Washington's attorney to continue to represent him because it determined Washington did not manifest a desire to represent himself—only to substitute his counsel. The District Court ordered Washington shackled throughout trial. The trial ended in a mistrial, after which the District Court dismissed Washington's counsel.

The District Court appointed the federal public defender to represent Washington at his second trial. On the day trial was scheduled to begin, Washington appeared in the courtroom in restraints. Before jury selection, the public defender moved for the removal of Washington's leg irons. The District Court denied the motion and stated:

> It's my understanding that the Marshals have requested that the defendant be in . . . shackles for the purposes of security in the courtroom. I will, therefore, take the advice of the Marshals at this time. However, if there comes a time during the trial when the shackles are not needed, the Court will take that into consideration and have them removed.

App. at 457–58.

Washington then requested to waive his right to counsel and represent himself. The District Court attempted to conduct a *Faretta* colloquy with Washington by informing him of the charge and possible punishments he faced as well as asking him our

3

suggested questions for evaluating whether a defendant's waiver of counsel is knowing and voluntary. *See United States v. Peppers*, 302 F.3d 120, 136–37 (3d Cir. 2002) (listing questions). Washington refused to participate in the colloquy, either refusing to provide substantive answers to the District Court's questions or refusing to speak at all. Following the attempted colloquy, the District Court again asked Washington if he wished to represent himself, and Washington confirmed he did. The District Court found that Washington's waiver of counsel was knowing and voluntary, permitted Washington to represent himself, and appointed Washington's public defender as standby counsel.

Washington proceeded to represent himself at trial from behind the counsel table, with his restraints obscured behind table drapes, until he elected to testify. To ensure the jury would not see Washington's leg restraints, the District Court instructed the Marshals to place Washington in the witness box outside the presence of the jury. Washington objected and stated that he wished to walk in leg restraints to the witness box while the jury was present. The District Court denied Washington's request.

At the outset of his narrative testimony, Washington told the jury, "I had a right to sit at the table and walk to the jury stand. . . . They don't want me to walk over there, 'cause I have shackles and they've [been] trying to hide these shackles since I've been here. . . . I have never had no issue since I've been here."[2] App. at 783. The District

---

[2] Despite Washington's assertion, there appear to be several instances (not clearly within the record) of Washington's physically disruptive conduct that would support the District Court's decision to order Washington restrained. During Washington's fingerprinting prior to his first trial, he made a threatening statement to his attorney and committed a physical outburst that required the Marshals to use a taser.

Court attempted—but failed—to interrupt and stop Washington before he revealed his shackles to the jury. The District Court then issued a cautionary instruction to the jury: "The defendant, as he said, has shackles and that is required under the circumstances. The fact that he has shackles on should make no difference to you, whatsoever, in determining whether he's guilty of the charge set forth in the [superseding] indictment." App. at 783. There is no indication in the record the jury could see Washington's restraints aside from this instance.[3]

Washington was ultimately convicted. At sentencing, the District Court determined Washington had two prior convictions of a crime of violence under U.S.S.G. § 2K2.1, and calculated a base offense level of 24. Washington was sentenced to the statutory maximum sentence of 120 months imprisonment. This timely appeal followed.

## II.[4]

Washington argues his waiver of his right to counsel was not knowing and intelligent.[5] Under the Sixth Amendment, a defendant has a right to counsel as well as a

---

[3] Before his testimony and outside the presence of the jury, Washington became physically disruptive while the Marshals escorted him from the counsel table to the witness box, which involved the use of the court panic button and required several Marshals to restrain him. Although this incident occurred off the record, the District Court later referred to it when denying Washington's request to have his leg irons removed so he could speak at the podium, stating, "How could I possibly allow them to be removed after what you did this morning, Mr. Washington?" App. at 857–59.

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[5] We exercise plenary review over the District Court's legal determination regarding a defendant's waiver of his Sixth Amendment rights. *United States v. Taylor*, 21 F.4th 94, 99 (3d Cir. 2021). We review the factual findings of the District Court for clear error. *United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002). In this review, "we must

right to refuse counsel and proceed *pro se*. *Faretta v. California*, 422 U.S. 806, 819 (1975). In choosing self-representation, the defendant "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Id.* at 835. Accordingly, a defendant "should be made aware of the dangers and disadvantages of self-representation," *id.*, such as "the technical problems he may encounter in acting as his own attorney" and "the risks he takes if his defense efforts are unsuccessful," *United States v. Welty*, 674 F.2d 185, 188 (3d Cir. 1982).

To satisfy itself that the defendant's waiver is knowing and intelligent, a district court must conduct a *Faretta* inquiry. *United States v. Taylor*, 21 F.4th 94, 100 (3d Cir. 2021) (citing *Peppers*, 302 F.3d at 129, 130–31; *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000)). We recommend district courts conduct the *Faretta* inquiry as an on-the-record colloquy following a set of model questions to ensure the defendant is adequately informed of the dangers and disadvantages of self-representation and understands those risks. *Taylor*, 21 F.4th at 102 (citing *United States v. Jones*, 452 F.3d 223, 229 (3d Cir. 2006); *Peppers*, 302 F.3d at 136–37). But we have also explained there is "no talismanic formula for the court's inquiry," *Peppers*, 302 F.3d at 135, and a court "may employ tools other than direct questioning if the circumstances call for them," *Taylor*, 21 F.4th at 103 (citing *United States v. Garey*, 540 F.3d 1253, 1267–68 (11th Cir. 2008) (en banc) (explaining that, when a defendant refuses to engage in a dialogue with the court, "a

---

indulge every reasonable presumption against a waiver of counsel." *Taylor*, 21 F.4th at 99. Because a court commits structural error if it improperly denies a defendant's request to represent himself, we may not consider the error harmless. *Id.*

*Faretta*-like monologue will suffice")). At a minimum, the district court must assure itself the defendant understands "the nature of the charges, the statutory offenses included within them, and the range of allowable punishments thereunder." *Taylor*, 21 F.4th at 103 (quoting *United States v. Booker*, 684 F.3d 421, 425–26 (3d Cir. 2012)).

Here, the District Court conducted an on-the-record inquiry with Washington after he expressed his desire to represent himself. The District Court asked Washington the model questions we suggested in *Peppers* to ensure a defendant understands the risks of forgoing representation by counsel. The District Court advised Washington of the charge and range of punishments he faced, of the rules he must follow at trial, and that a trained attorney would provide more competent representation. Washington refused to provide substantive answers to the District Court's questions, but the record reveals Washington understood the District Court's warnings regarding the charge and possible punishments he faced, as well as the rules he must follow when representing himself. For example, after the District Court warned Washington that he was unfamiliar with the law, court procedures, and rules of evidence, Washington replied, "Well, I never answered to the question." App. at 471. Most importantly, after the District Court advised him of all the risks of self-representation, Washington reaffirmed that he wished to waive his right to counsel and represent himself. Furthermore, after waiving his right to counsel, Washington was assisted during trial by standby counsel.

The District Court's *Faretta* inquiry satisfied its responsibility to ensure Washington was advised of the risks of proceeding without counsel and his decision to waive counsel was knowing and intelligent. Despite Washington's refusal to participate

7

in the District Court's attempted colloquy, the District Court's *Faretta* inquiry sufficed because Washington was warned of the risks of self-representation, demonstrated an understanding of the District Court's warnings, and stated a clear desire to represent himself.

We note the District Court's approach here is permissible but not required, and the outcome is dependent on the difficult circumstances faced by the District Court. We have explained that "whenever a defendant invokes his right to self-representation, a district court risks violating the defendant's constitutional rights whether or not it permits the defendant to proceed *pro se.*" *Taylor*, 21 F.4th at 105 (citing *United States v. Pryor*, 842 F.3d 441, 451 (6th Cir. 2016)). On one hand, a court might "thrust counsel upon the accused[] against his considered wish," which "violates the logic of the [Sixth] Amendment." *Faretta*, 422 U.S. at 820. On the other hand, a court risks permitting a defendant to waive the right to counsel without full consideration of the consequences, which goes against "a long tradition of concern for persons haled into a legal system that they cannot understand." *Peppers*, 302 F.3d at 131. And whether a court grants or denies a defendant's motion to proceed *pro se*, the defendant may later appeal the court's determination and "try his case again if he loses." *Pryor*, 842 F.3d at 451.

Accordingly, where an obstreperous defendant frustrates a court's attempted *Faretta* colloquy, a court alternatively could deem a defendant's motion to proceed *pro se* as withdrawn or deny the motion without prejudice but permit the defendant to renew the request to proceed *pro se* on the condition that the defendant participate in the court's *Faretta* colloquy. But a defendant should not be permitted to gain a new trial on appeal

8

by arguing a court erred in granting his request to proceed *pro se* where his refusal to participate in the court's *Faretta* inquiry is the source of the purported error.

III.

Washington argues the District Court impaired his due process rights by ordering him shackled during trial without conducting a proper inquiry or providing adequate justification, and instead delegating the shackling decision to the Marshals.[6] The Fifth Amendment prohibits "the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). Before ordering a defendant shackled at trial, we have explained that a district court "should hold a proceeding outside the presence of the jury to address whether a party should be shackled." *United States v. Ayala*, 917 F.3d 752, 762 (3d Cir. 2019) (quoting *Sides v. Cherry*, 609 F.3d 576, 582 (3d Cir. 2010)) (internal quotation marks omitted). A district court must balance the prejudice to the defendant against the need to maintain courtroom security, and if it determines shackles are necessary, it should "impose no greater restraints than are necessary" and must "take steps to minimize the prejudice resulting from the presence of the restraints." *Sides*, 609 F.3d at 581 (quoting *Davidson v. Riley*, 44 F.3d 1118, 1123 (2d Cir. 1995)).

When determining whether shackles are required, a court may rely on a variety of sources, such as "records bearing on the inmate's proclivity toward disruptive and/or

---

[6] We review the District Court's decision about shackling for abuse of discretion. *United States v. Ayala*, 917 F.3d 752, 761 (3d Cir. 2019).

violent conduct . . . and the opinions of correctional and/or law enforcement officers and the federal marshals." *Id.* at 582 (quoting *Woods v. Thieret*, 5 F.3d 244, 248 (7th Cir. 1993)) (internal quotation marks omitted). A district court "may rely heavily on advice from court security officers," but it may not delegate the shackling decision entirely to the marshals. *Id.* (quoting *Woods*, 5 F.3d at 248) (internal quotation marks omitted). If a district court delegates the shackling decision entirely to the marshals, that is abuse of discretion. *Id.* (quoting *Lemons v. Skidmore*, 985 F.2d 354, 358 (7th Cir. 1993)).

The record shows the District Court did not abuse its discretion by impermissibly delegating the shackling decision to the Marshals. The District Court stated it would "take the advice of the Marshals" and order Washington shackled, but "if there comes a time during the trial when the shackles are not needed, the Court will take that into consideration and have them removed." App. at 458. And the record shows that the District Court later reconsidered and reaffirmed its decision to order Washington restrained—without reference to the Marshals' recommendation—when Washington renewed his request to remove his restraints. *See supra* note 3. A court does not delegate the shackling decision entirely when it adopts the advice of the marshals while reserving the discretion to remove the shackles at a later time. *See Sides*, 609 F.3d at 582 (holding no abuse of discretion where the court "adopted the Deputy Marshal's advice" but "nonetheless acknowledged that the Marshal's view was only a recommendation and that the Court could have the shackles removed" (internal quotation marks omitted)).

The record does not reveal any inquiry from the District Court into the necessity of shackles or any balancing of the need for shackles against the prejudice to Washington.

It appears the Marshals recommended Washington be shackled, but the District Court did not receive this recommendation on the record. And although it appears the District Court was aware of several instances of Washington's dangerous physical conduct that could support a decision to order him restrained, *see supra* notes 2–3, the District Court made no findings on the record about the need for restraints and did not explain which facts guided its conclusion that Washington must be restrained.

We need not determine whether the District Court abused its discretion in ordering Washington shackled because we conclude that any error was harmless. *See Sides*, 609 F.3d at 584. In determining whether a shackling decision was harmless error, we consider:

> (1) the strength of the case in favor of the prevailing party; (2) the effect the restraints may have had in light of the nature of the issues and the evidence involved in the trial; (3) whether measures were taken to prevent the jury from viewing the restraints; and (4) whether the district court instructed the jury to disregard the restraints in deciding the case.

*Sides*, 609 F.3d at 584 (internal quotation marks and citations omitted); *see also Deck*, 455 U.S. at 635 ("The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967) (alteration in the original)).

For the first factor, the Government presented a compelling case. The Government presented evidence that Washington was a felon, and during his testimony Washington conceded that he was aware he was a felon and prohibited from possessing a firearm. The Government also presented testimony from police officers that they observed Washington sitting on a firearm in a vehicle at the time of the encounter leading

11

to his arrest. Washington did not dispute this testimony in his direct testimony.[7] The Government also presented the recovered firearm and ammunition into evidence as well as testimony that the weapon traveled in interstate commerce.

The second factor—the effect the restraints may have had considering the nature of the issues and evidence—also weighs in favor of the Government. Washington testified that he was previously convicted of robbery and aggravated assault and served over nine years in prison. Washington also wore prison attire during the trial, so the jury was aware Washington was currently in the custody of the Government.[8] With the jury aware of these circumstances, it is unlikely that the jury seeing Washington in restraints would result in any prejudice against him. And although Washington argues the restraints prejudiced his ability to represent himself, the record shows Washington was able to thoroughly question witnesses and present arguments to the judge and jury despite having to do so from the draped counsel table. He also had standby counsel available who assisted in bringing exhibits to witnesses and presenting arguments when necessary.

The third and fourth factors are straightforward. The District Court concealed Washington's restraints at the counsel table using drapes and moved Washington to and from the witness box out of view of the jury. There is nothing in the record to show the jury was aware of the restraints before Washington told the jury he was shackled during

---

[7] On cross examination, Washington asserted the officers' testimony was false. On redirect, he asserted that the firearm police found at the scene was not his.

[8] Washington elected to wear prison attire in his first trial, but the record does not reflect that he made the same choice again at his second trial. Washington does not appeal the issue of his attire during his second trial.

his direct testimony. Immediately after Washington revealed his restraints to the jury, the District Court instructed the jury to disregard Washington's restraints using neutral language that did not suggest Washington was violent or dangerous. We have held that such precautions and a cautionary instruction are appropriate to dispel prejudice from the jury seeing a defendant in restraints. *Sides*, 609 F.3d at 584–85.

Accordingly, any error resulting from the District Court's failure to explicitly set forth its shackling decision on the record or from the jury seeing Washington in shackles was harmless.

IV.

Finally, Washington appeals several issues regarding his sentencing. Among the sentencing issues on appeal, Washington argues that the District Court erred in assigning an enhanced base offense level under U.S.S.G. § 2K2.1 because, in light of the Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), Washington's second-degree robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(iv) may be committed with a mens rea of recklessness and does not constitute a "crime of violence."[9] The Government concedes that Washington's robbery conviction may not be categorized as a crime of violence following *Borden* and his sentence should be vacated. We agree, and will vacate Washington's sentence and remand to the District Court for resentencing.[10]

---

[9] We exercise plenary review over whether a prior conviction is a crime of violence as defined by the guidelines. *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018).
[10] The Government does not substantively discuss Washington's remaining sentencing issues on appeal: (1) that his conviction of aggravated assault under 18 Pa. Cons. Stat.

V.

For the forgoing reasons, we will affirm the conviction, vacate the sentence, and remand the matter to the District Court for resentencing.

---

§ 2702(a) is not a crime of violence; (2) that he was deprived of his right to be present at sentencing when the District Court sentenced him by video; (3) that he was deprived of his right to allocution at his video sentencing hearing; and (4) that the District Court erred in imposing non-mandatory supervised release conditions not orally pronounced at his sentencing hearing. The Government concedes these issues may be addressed and, if necessary, remedied by the District Court upon resentencing, and Washington agrees. Accordingly, we do not reach these issues here.