**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2807
_____

UNITED STATES OF AMERICA

v.

IKLAS DAVIS,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-20-cr-00024-001)
District Judge: Honorable J. Nicholas Ranjan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 5, 2023

Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges*

(Filed: December 8, 2023)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**MATEY**, *Circuit Judge*.

Iklas Davis was convicted of several crimes following a jury trial. Proceeding pro se on appeal, Davis challenges those convictions and his corresponding sentence. For the reasons below, we will affirm his convictions and sentence.

**I.**

In 2017, Davis and his associates stole driver's licenses and credit cards from parked vehicles and used them for fraudulent purchases. When surveillance footage of the crimes was publicized, Davis voluntarily surrendered to police and was later indicted.[1] After the District Court appointed counsel, Davis asked to represent himself.[2] In response, the District Court attentively conducted three *Faretta* colloquies and found that Davis did not clearly and unequivocally satisfy the requirements for self-representation. During a fourth *Faretta* colloquy, Davis frustrated the District Court's inquiries.

Davis proceeded to a jury trial with help from counsel.[3] He testified in his own defense, admitted committing the crimes, and was convicted. At sentencing, Davis's counsel successfully objected to portions of the presentence investigation report (PSR), and those objections were incorporated into the District Court's sentencing calculation. The District Court sentenced Davis to serve 60 months in prison and a three-year term of

---

[1] For conspiracy, in violation of 18 U.S.C. § 371; use of unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(2) and 2; and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

[2] Davis's first and second appointed counsel moved to withdraw.

[3] It was Davis's third appointed counsel who represented him through trial.

supervised release. He now appeals pro se, having completed this Court's waiver of counsel form.[4]

## II.

Though Davis raises several issues on appeal that challenge his convictions and sentence, none have merit, so we will affirm.

## A.

Davis argues that the District Court erred in denying his requests for self-representation.[5] The Sixth Amendment guarantees the right of the accused to "have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In *Faretta v. California*, the Supreme Court recognized that this guarantee "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." 422 U.S. 806, 819 (1975).

This right to self-representation, however, is not boundless. "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits" "associated with the right to counsel." *Id.* at 835. Applying *Faretta*, we have explained that a defendant must express the desire to proceed pro se "clearly and unequivocally." *United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002).

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

[5] Davis preserved this issue for appeal. We engage in plenary review of the District Court's ruling on a defendant's request to represent himself, and review facts found by the District Court for clear error. *United States v. Taylor*, 21 F.4th 94, 99 (3d Cir. 2021).

3

The trial court must then confirm that "the defendant understands 'the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.'" *Id.* (citation omitted). The court must also "assure itself that the defendant is competent to stand trial." *Id.* (internal quotation marks omitted).

During the first three *Faretta* colloquies, the District Court signaled that Davis was "potentially waiv[ing] important constitutional rights" and needed to understand that "this is a serious decision with heavy consequences." Supp. App. 61, 64. Among other questions, the District Court asked Davis about his state of mind, his education, his experience with self-representation, the charges he faced, and the associated penalties. All showing the District Court's careful attention to and respect for Davis's desire for self-representation. Still, none of Davis's responses showed a clear and unequivocal waiver[6] of the right to counsel, *Peppers*, 302 F.3d at 132, so the District Court did not err in denying Davis's request. *See United States v. Banks*, 55 F.4th 246, 253–55 (3d Cir. 2022).

---

[6] For example, in response to the District Court asking whether it was Davis's desire to represent himself, he said he was "not going pro se." Supp. App. 63. He also told the District Court he had the right to counsel and "I will not at no point give up that right." Supp. App. 65. At other times, Davis said he "need[ed] assistance to proceed along in th[e] case" and to "prepare the case to present to the jury or to present to this Court." Supp. App. 112, 113. And when the District Court tried to explain to Davis the requirements of presenting his case in compliance with the Federal Rules of Evidence and Federal Rules of Criminal Procedure, Davis said that because he was "not an attorney," he would not be "bound by the same rules as an attorney." Supp. App. 211–13.

Another attempted *Faretta* colloquy ended when Davis frustrated the District Court's attempt to get through "the very first question." Supp. App. 291. "If a defendant disobeys the court's directions and, in doing so, stymies its inquiry into the defendant's request to represent himself, the court may truncate its *Faretta* colloquy." *United States v. Taylor*, 21 F.4th 94, 103 (3d Cir. 2021). There was thus no error when the District Court did just that and denied Davis's final request for self-representation.

**B.**

Davis also challenges the sufficiency of evidence used to convict him of the charged crimes.[7] Our review is "greatly tempered by giving substantial deference to the jury's finding of guilt." *United States v. Lacerda*, 958 F.3d 196, 225 (3d Cir. 2020). We focus on whether "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found" the defendant guilty. *Id*. at 319 (emphasis in original). Reversal "is only appropriate where there is no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *Lacerda*, 958 F.3d at 225 (citation and internal quotation marks omitted).

---

[7] Davis preserved this issue for appeal. We engage in plenary review of sufficiency challenges. *United States v. Lacerda*, 958 F.3d 196, 225 (3d Cir. 2020).

The Government presented ample evidence to support the verdicts. The Government introduced surveillance photos showing Davis transacting with the stolen credit cards; records of text messages between Davis and his co-conspirators with many pictures of victims' stolen credit cards and driver's licenses; sales receipts of the fraudulent purchases; and Davis's internet browsing history showing he searched for victims' biographical information. Davis also stipulated to other facts and elements of the crimes charged. And Davis admitted on the stand that he committed the crimes. Supp. App. 522 ("Like I said, I did it."). Because a jury could reasonably find guilt beyond a reasonable doubt based on this evidence, Davis's sufficiency challenge fails.

**C.**

Finally, Davis challenges the application of a total ten-point enhancement to his base offense level for a loss of more than $40,000; an offense involving ten or more victims; and for possession of device-making equipment. *See* U.S.S.G. §§ 2B1.1(b)(1)(D), (b)(2)(A)(i), (b)(11)(A)(i).[8] We review this challenge for plain error based on a complicated history.[9] *United States v. Henderson*, 64 F.4th 111, 116–17 (3d Cir. 2023). Because we conclude the District Court did not plainly err, we will uphold Davis's sentence.

---

[8] These enhancements must be proven by a preponderance of the evidence. *See United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007).

[9] At first, Davis's counsel objected to the sentencing enhancements for loss amount and number of victims. Those two objections were then withdrawn, while the objection to the obstruction of justice enhancement remained. Davis then submitted a motion pro se objecting again to all three enhancements, but that was denied because Davis was still, at the time, represented by counsel. Leaving the issue forfeited.

"Plain error review requires finding that (1) there is an error that has not been waived, (2) the error is plain, (3) the error affected appellant's substantial rights, and (4) the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Henderson*, 64 F.4th at 117 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). An appellant can show that an error affected substantial rights under the third prong if he shows that he was "sentenced under an incorrect Guidelines range—whether or not the ultimate sentence falls within the correct range." *Id.* at 120. Davis's claim fails here.

For the amount of loss enhancement, "[a] district court must make a reasonable estimate of the loss, based on available information in the record." *United States v. Laird*, 67 F.4th 140, 144–45 (3d Cir. 2023) (citation and internal quotation marks omitted).[10] At sentencing, the District Court weighed "all of the materials submitted," Supp. App. 720, including evidence presented at trial for the amount of fraudulent purchases, Davis's stipulations to other thefts of cash and valuable personal effects, and the PSR, containing the Government's conservatively estimated loss amount,[11] to reasonably estimate the amount of loss.

---

[10] In recent decisions, we have explained that "in calculating the loss under the Sentencing Guidelines, our focus is limited to the 'actual loss' suffered by the victim," defined as "'the reasonably foreseeable pecuniary harm that resulted from the offense.'" *United States v. Kousisis*, 82 F.4th 230, 245 (3d Cir. 2023) (citing *Banks*, 55 F.4th at 256–57 and U.S.S.G. § 2B1.1 cmt. n.3(A)(i)).

[11] In *United States v. Scarfo*, we found no error when the District Court utilized the PSR to help it "reasonabl[y] estimate" the amount of loss for a Guidelines enhancement. 41 F.4th 136, 212–13 (3d Cir. 2022), *cert. denied sub nom. Pelullo v. United States*, 143 S. Ct. 1044 (2023) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)).

As for the number of victims enhancement, Davis stipulated that the offense involved ten or more victims, so the District Court did not plainly err in imposing the corresponding enhancement.

Finally, with respect to the possession or use of device-making equipment enhancement, a search of Davis's home turned up equipment used to create fraudulent access devices and notes containing the personal identification information of various individuals. We have held that possession of such equipment supports this Guidelines enhancement. *United States v. A.M.*, 927 F.3d 718, 719–21 (3d Cir. 2019).

Because we cannot say the District Court plainly erred in calculating Davis's Guideline range, we will affirm his sentence.[12]

---

[12] Davis's remaining arguments are without merit.

Davis states the District Court lacked jurisdiction, but jurisdiction existed under 18 U.S.C. § 3231, which grants "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." *Accord Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 269 (2023). And contrary to Davis's assertions, the U.S. Attorney had standing to prosecute him because an "injury to [the United States's] sovereignty arising from violation of its laws . . . suffices to support a criminal lawsuit by the Government." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). Davis also filed a motion to this effect on March 23, 2023, asking this Court to void and vacate the District Court's judgment for lack of jurisdiction and fraud in factum. For the reasons already stated, we will deny Davis's motion.

Davis also contends that he was immune from prosecution as a "private citizen," and that he was wrongfully prosecuted under the "Trading with the Enemy Act," "Emergency Banking Act," and the "War Powers Act." Opening Br. 4. Davis appears to make the private citizen argument for the first time on appeal, and it is also incorrect. *See Taylor*, 21 F.4th at 101 n.6 (finding defendant's "sovereign citizen" claim "lack[ed] merit"); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (finding that defendant's sovereign citizen defense had "no conceivable validity in American law"). Further, Davis was not prosecuted under the statutes he identifies.

\* \* \*

For these reasons, we will affirm Davis's convictions and sentence.

---

Davis also argues that his appointed counsel had interests "directly adverse to" his and that the representation violated "the canons of professional ethics." Opening Br. 2. But this argument, raised for the first time on appeal, lacks any factual specificity.

Last, Davis claims the District Court prevented him from objecting to the PSR at sentencing. But Davis's counsel did object, and successfully secured a reduction of an enhancement for obstruction of justice.