**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1599
_____

UNITED STATES OF AMERICA

v.

THOMAS E. NOBLE,
A/K/A WALTER M. GUYER
A/K/A THOMAS D. GUYER,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cr-00015-001)
District Judge:  Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1
March 30, 2022
_____

Before:  CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>, and ROSENTHAL, <u>District Judge</u>[*]

(Filed: August 2, 2022)
_____

Whitney C. Cloud
Graham L. Robinson
Jesse S. Wenger
Office of United States Attorney
1313 North Market Street
Hercules Building, Suite 400
Wilmington, DE 19801

    <u>Counsel for Appellee</u>

Carina Laguzzi
Laguzzi Law
P.O. Box 30095
Philadelphia, PA 19103

    <u>Counsel for Appellant</u>
_____

OPINION OF THE COURT
_____

---

[*]    Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

**CHAGARES**, <u>Chief</u> <u>Judge</u>.

Thomas Noble appeals his judgment of conviction for possession of child pornography on a number of bases. Notably, Noble claims that the District Court erred in determining that he waived and forfeited his right to proceed pro se and in appointing him counsel. For the following reasons, we hold that the District Court properly decided each issue challenged, and we will affirm the judgment.

I.

A grand jury indicted Noble in February 2018 on one count of attempted receipt of child pornography by someone previously convicted of a child pornography offense, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1) and 2256(2)(A), and one count of possession of child pornography by someone previously convicted of a child pornography offense, in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2) and 2256(2)(A). Shortly after being indicted, Noble indicated to a Magistrate Judge that he wished to represent himself pro se; the judge conducted a colloquy to ensure that Noble was knowingly and voluntarily waiving his right to counsel. The judge granted Noble's request to proceed pro se, and appointed an attorney from the Federal Public Defender's Office as standby counsel.

A few months thereafter, in July 2018, Noble announced at a status hearing that he was invoking his "Fifth Amendment right to be silent." Supplemental Appendix ("Supp. App.") 70. Noble had filed numerous pro se motions accusing the District Judge of criminal conduct, alleging that all attorneys and judges within this circuit were controlled by

3

the "illuminati," and demanding that his case be transferred to a court outside the Third Circuit. He stated that he intended to remain silent until his case had been transferred and he had been appointed new counsel.[1] From that date through his trial and sentencing, Noble did not speak in court except on two occasions, largely refused to acknowledge or look at the District Judge while attending hearings, and returned all legal mail to the court.

In April 2019, almost ten months after the announcement of his silence, the District Court scheduled a hearing to determine whether Noble had waived or forfeited his right to represent himself. The court asked Noble a series of questions regarding his ability to represent himself. Noble refused to answer any questions or acknowledge the court. The court ordered Noble to answer each question, and found that Noble had violated the court's orders twelve times by not answering them. The court determined that Noble's behavior was obstructionist and that Noble had therefore waived and forfeited his right to represent himself. In May 2019, the court appointed Noble's standby counsel as his attorney.[2]

Noble was tried by a jury, convicted on both counts, and

---

[1] The District Court ordered a competency examination as a result of this hearing and Noble's previous behavior. Noble was found to be competent, and his standby counsel did not oppose this finding after an independent expert reviewed the report.

[2] At the April hearing, Noble read a statement in court alleging that his standby counsel had been incompetent by not assisting him in pursuing his various motions. Noble then "re-

4

sentenced to 180 months of imprisonment. His counsel from the Federal Public Defender's office filed a notice of appeal and then filed a motion to withdraw. That motion was granted and substitute counsel was appointed.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over the District Court's legal determination regarding a defendant's waiver of his Sixth Amendment rights. See United States v. Taylor, 21 F.4th 94, 99 (3d Cir. 2021). We review the factual findings of the District Court for clear error. See United States v. Peppers, 302 F.3d 120, 127 (3d Cir. 2002). A court's improper denial of the right to proceed pro se is structural error, and we may not consider it harmless. See Taylor, 21 F.4th at 99.

## III.

### A.

Noble contends that the District Court erred in holding that Noble had "waived and forfeited" his right to proceed pro se and in appointing counsel against his wishes. Supp. App. 158. The Sixth Amendment provides criminal defendants the right to proceed pro se. See Faretta v. California, 422 U.S. 806, 819 (1975). When a defendant expresses the wish to represent himself, the court must conduct an inquiry to ensure that the

___

invok[ed]" his right to remain silent. Supp. App. 144. The court construed Noble's statement as a motion to substitute counsel; his standby counsel likewise filed a motion to withdraw. The court denied these motions.

5

defendant understands the consequences and risks of waiving the right to counsel. See Peppers, 302 F.3d at 133. That inquiry occurred at the outset of Noble's case — Noble expressed his desire to proceed pro se, the Magistrate Judge conducted a thorough colloquy with him, and Noble acted as his own attorney (with standby counsel from the Federal Public Defender's office) for over a year.

The right to represent oneself is not absolute, however; judges "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Faretta, 422 U.S. at 834 n.46 (citing Illinois v. Allen, 397 U.S. 337 (1970)). Noble ceased communicating with the court in July 2018. For ten months he returned all legal mail unopened, and he refused to respond to questions from the judge during pre-trial hearings. This pattern continued even when the judge repeatedly held that Noble was violating orders by refusing to answer questions.

The District Court concluded that it would be impossible to conduct a fair trial with a pro se defendant who refused to cooperate or engage at all with the court. The court found that based on Noble's obstruction over several months, it could "confidently and reasonably predict" that if the case went to trial, Noble "would not respond to requests, guidance, or indeed an order to participate in a meaningful way which is . . . necessary . . . for [the court] to conduct a fair trial." Supp. App. 159. The court also concluded that Noble would be unable to preserve his rights and arguments for appeal if he was unwilling to articulate any of those arguments before the District Court. Finally, the court noted that it had explained to Noble that his right to remain silent would not be undermined by "minimal cooperation" with the court so that the case could

6

proceed, but that Noble nonetheless refused to provide any such cooperation. Supp. App. 160. Based on these circumstances, the court held that Noble waived and forfeited his right to represent himself and must be appointed counsel.

We agree it would have been impossible to conduct a fair trial if Noble continued pro se. Noble was found to be competent in an examination supported by his then-standby counsel, and he chose to speak on two occasions throughout the proceedings. Under the circumstances, it is clear that Noble's silence was a conscious obstructionist tactic. The District Court was exceedingly patient in its attempted accommodation and careful in its thorough consideration of the issues, and it did not err by appointing counsel after ten months of obstruction. Defendants forfeit their right to self-representation when they impede proceedings in such a manner. See, e.g., United States v. Brock, 159 F.3d 1077, 1080–81 (7th Cir. 1998) (holding that a defendant had forfeited his right to self-representation where he "refus[ed] to answer the court's questions . . . ma[king] it extremely difficult for the court to move forward with its proceedings" and noting that the "obstructionist conduct persisted even after several contempt citations"); United States v. Mosley, 607 F.3d 555, 559 (8th Cir. 2010) (holding that a defendant had forfeited the right to self-representation where he "refused to respond to [the judge's] questions and participate in the proceedings"); cf. Faretta, 422 U.S. at 836 (noting that the defendant should have been permitted to proceed pro se where the judge warned that he "would be required to follow all the 'ground rules' of trial procedure"); United States v. Engel, 968 F.3d 1046, 1051 (9th Cir. 2020) (explaining that if a defendant had violated court orders, that may qualify as sufficiently disruptive but "a single instance of disobedience that is unaccompanied by open

7

defiance or disruption does not justify the termination of [a defendant's] constitutional right to self-representation without prior warning.").

This Court recently reiterated the importance of a defendant's right to self-representation and held that judges should "refrain from denying" such a request "where disruption is predicted but has not occurred." Taylor, 21 F.4th at 104. That is not what occurred here. The District Court did not act prematurely or prioritize expediency over a defendant's constitutional rights. Noble was permitted to represent himself for many months and the right was only deemed waived and forfeited after repeated obstructionist conduct and warnings from the District Court. We will accordingly affirm the judgment of the District Court on this matter.

B.

Noble's other arguments are likewise unavailing. First, the District Court did not err when it denied counsel's motion to withdraw from representation and Noble's motion to substitute counsel (which the court construed from Noble's complaints about his attorney). We review both denials for abuse of discretion. See United States v. Bellille, 962 F.3d 731, 738 (3d Cir. 2020); United States v. Gillette, 738 F.3d 63, 78 (3d Cir. 2013). The court concluded that Noble had not established good cause for the substitution, since the breakdown in communication with his attorney was "entirely Mr. Noble's fault" as he "unilaterally decided not to engage with his standby counsel from the beginning due to personal distrust of all lawyers and judges practicing in the Third Circuit." Supp. App. 177. Such obstinance without reason does not form the basis of good cause. See, e.g., Romero v.

8

Furlong, 215 F.3d 1107, 1114 (10th Cir. 2000) ("A breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation."); United States v. John Doe No. 1, 272 F.3d 116, 124–25 (2d Cir. 2001) (determining it was "eminently reasonable" for the district court to conclude that the defendant was the source of conflict and "that substitution of new counsel was unlikely to solve the problem"); United States v. Muslim, 944 F.3d 154, 166–67 (4th Cir. 2019) (concluding that the district court acted within its discretion in denying a motion to withdraw where the "[d]efendant's conduct was a major causative factor" in the breakdown of communication between the defendant and his attorney). The court had already determined that Noble could not proceed pro se, and based upon Noble's own statements, it reasonably determined that Noble would not accept any counsel appointed by it or from anywhere within the Third Circuit and so substitution of counsel would not remedy Noble's complaints. Given the court's thorough inquiry into the matter and the circumstances of this case, the court did not abuse its discretion by denying these motions.

Second, the District Court did not abuse its discretion by admitting into evidence Noble's 2016 Delaware state court child pornography conviction.[3] In criminal cases where the defendant is accused of, among other crimes, possession of child pornography, "the court may admit evidence that the defendant committed any other" similar crime. Fed. R. Evid. 414(a), (d); see United States v. Heatherly, 985 F.3d 254, 269

---

[3] We review a district court's decision regarding the admissibility of evidence for abuse of discretion. See United States v. Tyson, 947 F.3d 139, 142 (3d Cir. 2020).

9

(3d Cir. 2021); <u>United States v. Cunningham</u>, 694 F.3d 372, 385 n.22 (3d Cir. 2012) ("Rule 414 constitutes an exception to the rule that evidence of prior bad acts is not admissible to show a defendant's propensity to commit the offense charged.") (quoting <u>United States v. Loughry</u>, 660 F.3d 965 (7th Cir. 2011)). Noble concedes that his prior conviction for possession of child pornography was admissible pursuant to this rule. He argues, however, that admission of his prior conviction was "more prejudicial that probative," Noble Br. 16, and should have been excluded under Rule 403, which permits exclusion of evidence if its "probative value is substantially outweighed by a danger of," <u>inter</u> <u>alia,</u> "unfair prejudice." Fed. R. Evid. 403.

We considered the interplay between Rule 403 and Rules 413–415 in <u>Johnson v. Elk Lake School District</u>, 283 F.3d 138 (3d Cir. 2002). We observed in that decision that where a prior act or conviction is "demonstrated with specificity and is sufficiently similar," <u>id.</u> at 156 (citation omitted), to the charged conduct, "the propensity inference that can be drawn from the past act evidence is greatest," <u>id.</u> In addition, we noted that in such cases, "Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and, conversely, did not want Rule 403 factors such as undue delay, waste of time, confusion of the issues, etc., to justify exclusion." <u>Id.</u> As a result, we held "the probative value of the similar act [should] be presumed to outweigh Rule 403's concerns." <u>Id.</u> at 144.[4]

---

[4] When a prior act or conviction is not substantially similar to the charged conduct or is insufficiently specific, we have instructed courts to consider a number of factors to conduct a Rule 403 analysis. <u>See</u> <u>Johnson</u>, 283 F.3d at 156. These

10

The District Court in the present case found that there was a "strong similarity" between Noble's prior conviction and the charged conduct. Supp. App. 217–18. Indeed, Noble employed the same file sharing protocol to share and receive the child pornography in both cases, and the court recognized the "close temporal proximity of the acts," which was "approximately 18 months." Supp. App. 218. As a result, the court determined that the presumption in favor of admitting the prior conviction applied. We agree and hold that the District Court did not abuse its discretion in admitting evidence of Noble's prior child pornography conviction.[5]

---

factors include "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." Id. (quoting United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998) (citations omitted)). The District Court in the present case also considered these factors, notwithstanding the presumption discussed above, in properly exercising its discretion to admit evidence of Noble's prior conviction.

[5] Even if the presumption of admissibility did not apply, the District Court still did not abuse its discretion in admitting the prior conviction. The court engaged in a typical Rule 403 balancing and held that the prior conviction had "high probative value" that was not substantially outweighed by the danger of unfair prejudice. Supp. App. 218. In addition, to "help alleviate any risk . . . of unfair prejudice," id., the District Court gave the jury a limiting instruction about the prior conviction and only permitted the prior conviction to come into evidence through a certified copy of the transcript, rather than through testimony.

Third, the District Court did not err by admitting Noble's prior statement against self-interest.[6] At a preliminary hearing, Noble stated that he believed that citizens have a "First Amendment right to look at or read whatever they want in the privacy of their own homes" and argued that the relevant criminal statutes were unconstitutional. Supp. App. 30–35. The court subsequently admitted this statement at trial. The statement was made after the Magistrate Judge had twice explained Noble's right to counsel to him, after Noble had accepted the appointment of standby counsel, and after counsel himself advised the court that Noble wished to speak. Noble's attempt to link this testimony to an earlier interrogation where he was not properly advised of his Miranda rights is far too attenuated. Noble volunteered the statement at issue after conferring with standby counsel; Miranda is simply not implicated. See, e.g., United States v. Melendez, 228 F.3d 19, 24 (1st Cir. 2000) ("[T]he dangers that animated Miranda do not exist in situations involving in-court testimony.").

---

[6] Noble did not challenge this before the District Court, so we review for plain error. See United States v. Williams, 974 F.3d 320, 340 (3d Cir. 2020). To establish plain error, Noble must show (1) an error, (2) that is plain, and (3) affects substantial rights. Id. If all three elements are established, it is within this Court's "sound discretion" to correct the error, but only if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

Fourth, the District Court did not err in finding Noble competent to stand trial.[7] After Noble stopped communicating with the court and his attorney, the District Court ordered a competency evaluation. The evaluator concluded that Noble was competent to stand trial. Noble's standby counsel contracted with an independent evaluator to review the report, and the evaluator agreed that Noble was competent. The District Court accepted the report and made "an independent finding" that Noble was competent to stand trial. Supp. App. 120. On appeal, Noble essentially argues that his diagnosed mental illnesses precluded a competency finding. But mental illness does not, on its own, mean that a defendant is not competent to stand trial. See United States v. Leggett, 162 F.3d 237, 244 (3d Cir. 1998). Rather, the defendant must possess the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." Drope v. Missouri, 420 U.S. 162, 172 (1975) (quoting Dusky v. United States, 362 U.S. 402, 402 (1975)). As discussed above, Noble's decision not to communicate with his attorney did not signify a lack of ability to do so. We discern no clear error in the District Court's finding, in light of the thorough and uncontested expert report, that Noble was competent to stand trial.

---

[7] We review the District Court's factual findings regarding competency for clear error. See United States v. Leggett, 162 F.3d 237, 241 (3d Cir. 1998). We exercise plenary review over the court's "interpretation and application of the standards for determining competency." Gillette, 738 F.3d at 76.

Fifth, the District Court did not plainly err by sustaining the Government's objection to part of Noble's testimony.[8] Before testifying, Noble was instructed by the court that when he testified, he could not discuss his mental health. Noble then testified that he was an "honorably discharged psychiatrically disabled veteran." Supp. App. 428. The Government objected, and the court sustained the objection. Noble's counsel argues that the objection was premature since Noble's testimony that he was "disabled" could have referred to physical or mental disability. This is a misreading of the record, which clearly shows that Noble referred to a "psychiatric" disability. As such, the court's ruling on the Government's objection was not erroneous.

Finally, the District Court did not abuse its discretion in denying Noble's motion for a mistrial.[9] At the outset of his testimony during trial, Noble accused a juror of disliking him by pointing out a specific juror and stating that the juror was "glaring at [him] hatefully." Supp. App. 427. Noble also stated that "if [he] had not been stripped of [his] right to represent [himself] unjustly by Judge Stark, [he] would have disqualified that juror as one of [his] picks." Supp App. 428. Noble's counsel moved for a mistrial because Noble "verbally

---

[8] Because Noble did not contest the District Court's ruling as to the objection, our review is for plain error. See Williams, 974 F.3d at 340 ("[R]egardless of the nature of the error, in direct appeals from judgments of conviction in the federal system, when there is no contemporaneous objection in the district court, our review must be for plain error[.]")

[9] We review denial of a mistrial for abuse of discretion. See United States v. James, 955 F.3d 336, 343 n.4 (3d Cir. 2020).

14

attacked a juror in the presence of the other jurors, and . . . criticized the Court in the presence of the other jurors." Supp. App. 440. It was within the discretion of the court to deny the motion for a mistrial stemming from this incident since it was Noble himself who caused the incident. To hold otherwise would create perverse incentives for defendants at trial. See United States v. Stewart, 256 F.3d 231, 242 (4th Cir. 2001); United States v. Padilla-Galarza, 990 F.3d 60, 80 (1st Cir. 2021); United States v. McCormac, 309 F.3d 623, 626–27 (9th Cir. 2002); United States v. Harris, 2 F.3d 1452, 1456 (7th Cir. 1993); United States v. Trevino-Rodriguez, 994 F.2d 533, 535 (8th Cir. 1993).

Even if we were to consider Noble's statement the same way we consider allegedly prejudicial statements from non-defendant witnesses, we would still hold that the District Court did not abuse its discretion. We will affirm the denial of a mistrial "where improper remarks were harmless, considering their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction." United States v. Self, 681 F.3d 190, 199 (3d Cir. 2012) (quoting United States v. Rivas, 493 F.3d 131, 140 (3d Cir. 2007)). The scope of the statement here was minimal in relation to the context of this trial. See United States v. Lore, 430 F.3d 190, 207 (3d Cir. 2005) (concluding that a single statement could hardly be deemed "pronounced and persistent"). The statement was "brief, isolated, and unsolicited by the prosecutor." Self, 681 F.3d at 199. The court took curative action by designating the juror in question as an alternate juror and excusing him from jury deliberation. The strength of the evidence also supports the court's decision; Noble did not meaningfully dispute that he possessed and viewed the images in question, but rather

15

argued that he believed he had the right to do so under the Constitution. Given the context of the entire trial, Noble's own comment could not serve as a basis for a mistrial.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.