**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2621
_____

UNITED STATES OF AMERICA,
Appellant

v.

JAMAR M. LEWIS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-20-cr-00583-001)
District Judge: Honorable Freda L. Wolfson, Chief District
Judge
_____

Argued on September 6, 2022

Before: JORDAN, HARDIMAN, and MATEY, *Circuit
Judges*.

(Filed: January 26, 2023)

Rachael A. Honig
Philip R. Sellinger
Mark E. Coyne
Richard J. Ramsay [Argued]
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

     *Counsel for Appellant*


Neal K. Katyal
Sean M. Marotta
Danielle D. Stempel [Argued]
Hogan Lovells US
555 Thirteenth Street, N.W., Columbia Square
Washington, DC 20004

Lisa Van Hoeck
Office of Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

     *Counsel for Defendant-Appellee*

Davina T. Chen
National Sentencing Resource Counsel
Federal Public & Community Defenders
321 East Second Street
Los Angeles, CA 90012

     *Counsel for Amici American Civil Liberties Union Foundation, American Civil Liberties Union Foundation of Delaware, America Civil Liberties Union Foundation of New Jersey, American Civil*

*Liberties Union Foundation of Pennsylvania, and National Association of Criminal Defense Lawyers, in support of Defendant-Appellee*

Sarah H. Concannon
Quinn Emanuel Urquhart & Sullivan
1300 I Street, N.W.
Suite 900
Washington, DC 20005

*Counsel for Amicus National Association for Public Defense, in support of Defendant-Appellee*

———————

## OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This appeal requires us to decide whether Jamar Lewis's 2012 conviction for possession with intent to distribute marijuana in violation of N.J. Stat. Ann. § 2C:35-5 is a "controlled substance offense" under § 2K2.1(a)(4)(A) of the United States Sentencing Guidelines. We hold that it is.

I

In July 2020, Lewis pleaded guilty in the United States District Court for the District of New Jersey to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g). That crime normally carries a base offense level of 14, but it increases to 20 for a defendant convicted of a prior "controlled

substance offense." U.S.S.G. § 2K2.1(a)(4)(A). A "controlled substance offense" is defined by the Guidelines as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b); *see* U.S.S.G. § 2K2.1 cmt. n.1 (stating that the § 4B1.2(b) definition governs § 2K2.1). The Guidelines do not separately define "controlled substance" as used in the definition of "controlled substance offense." *See* U.S.S.G. § 4B1.2(b). The Probation Office's Presentence Investigation Report applied the § 2K2.1(a)(4)(A) enhancement because of Lewis's 2012 New Jersey state conviction for possession with intent to distribute marijuana in violation of N.J. Stat. Ann. § 2C:35-5.

Lewis challenged the enhancement, arguing that only a conviction for certain conduct related to a *federally* regulated substance—that is, a substance listed in the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*—qualifies as a "controlled substance offense." And because the CSA at the time of Lewis's federal sentencing defined marijuana more narrowly than did New Jersey law at the time of his state conviction, Lewis argued his prior state conviction did not qualify as a predicate offense.

Lewis's arguments hinged on a change in the marijuana regulatory scheme. In 2018, Congress amended the CSA's definition of "marihuana" to exclude hemp—a low-THC version of cannabis with a variety of industrial and medicinal purposes. *See* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018; 21 U.S.C. § 802(16)(B)(i). In 2019, the New Jersey legislature followed suit, removing regulated hemp from its definition of marijuana. N.J. Stat. Ann. §§ 2C:35-2, 4:28-6 *et seq.* So the state law under which Lewis was convicted was broader than the federal CSA (and state law) at the time of his federal sentencing. Citing this discrepancy and relying on the categorical approach, Lewis argued that his prior state conviction did not qualify as a predicate "controlled substance offense" under Guidelines § 2K2.1(a)(4)(A). The Government responded that substances regulated by state law are controlled substances under the Guidelines, even if they are not regulated by federal law. On that view, New Jersey's regulation of hemp at the time of Lewis's prior conviction justified the enhancement.

The District Court agreed with Lewis. *United States v. Lewis*, 2021 WL 3508810 (D.N.J. Aug. 10, 2021). The Court found Lewis's base offense level was 14, his total offense level was 12 (after deducting two levels for acceptance of responsibility), his criminal history category was VI, and his applicable Guidelines range was 30 to 37 months' imprisonment. *Id.* at *2. The District Court varied upward, sentencing Lewis to 42 months. *Id.* The Government timely appealed.

II

The District Court had federal question jurisdiction under 18 U.S.C. § 3231. Our jurisdiction lies under 18 U.S.C.

5

§ 3742(b). We review de novo the District Court's interpretation of the Guidelines. *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc).

III

A

The categorical approach dictates whether a prior conviction qualifies as a predicate offense that triggers a Guidelines enhancement. *See United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018). That constrains us to consider only "the statutory definition[] of [Lewis's] prior offense[], and not the particular facts underlying [that] conviction[]." *See Taylor v. United States*, 495 U.S. 575, 600 (1990).[1]

In the typical application of the categorical approach, we would ask whether the elements of the state crime "match the elements" of the corresponding federal or generic crime. *Mathis v. United States*, 579 U.S. 500, 504 (2016). Not so in this case, however, because Guidelines § 4B1.2(b) defines a "controlled substance offense" by reference to certain prohibited conduct, not by reference to a federal criminal statute or a "generic" crime like burglary. *See Shular v. United States*, 140 S. Ct. 779, 783 (2020). So we must "determine not whether the prior conviction was for a certain offense, but whether the conviction meets some other criterion." *Id.* at 783;

---

[1] Nothing in the record suggests Lewis's state conviction was for possession with intent to distribute hemp rather than a still-controlled class of cannabis. But this is irrelevant under the categorical approach—"[t]he elements, not the facts, are key." *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016).

6

*see id.* at 784–87 (applying this approach to the substantially similar definition of "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii)). In other words, there is no federal or generic offense to "match" (or not) the elements of the state offense. *See United States v. Portanova*, 961 F.3d 252, 256–58 (3d Cir.) (employing a "looser categorical approach" to define possession of child pornography that did not "require a precise match between the federal generic offense and state offense elements"), *cert. denied*, 141 S. Ct. 683 (2020).

The "other criterion" to which we must compare the elements of Lewis's prior conviction, *Shular*, 140 S. Ct. at 783, comes directly from the Guidelines definition of controlled substance offense in § 4B1.2(b). That definition contains three parts: (1) "an offense under federal or state law," (2) "punishable by imprisonment for a term exceeding one year," (3) that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance," or possession with the intent to do so. U.S.S.G. § 4B1.2(b). Lewis does not dispute that his conviction for possession with intent to distribute marijuana is (1) an offense under state law (2) punishable by the requisite maximum sentence. *See* N.J. Stat. Ann. §§ 2C:35-5(b)(11), 2C:43-6. Our decision turns then on whether the state law under which he was convicted categorically "prohibit[ed] . . . the possession of *a controlled substance* . . . with intent to . . . distribute." U.S.S.G. § 4B1.2(b) (emphasis added). More specifically, the question is whether marijuana, as defined by the New Jersey law under which Lewis was convicted, is a "controlled substance" as used in the § 4B1.2(b) definition of "controlled substance offense."

7

B

We begin by asking whether the meaning of "controlled substance" within § 4B1.2(b)'s definition of "controlled substance offense" is limited to drugs regulated by the federal CSA. The courts of appeals have answered the question differently.

The Second and Ninth Circuits have held that the meaning of "controlled substance" is limited to drugs regulated by the CSA. *United States v. Townsend*, 897 F.3d 66, 74–75 (2d Cir. 2018); *United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021). The First and Fifth Circuits have endorsed this federal-law-only approach in dicta or in analogous contexts, but have yet to resolve the question conclusively. *United States v. Crocco*, 15 F.4th 20, 23–25 (1st Cir. 2021) (describing the federal-law approach as "appealing" and the state-or-federal-law approach as "fraught with peril"); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793–94 (5th Cir. 2015) (adopting a federal-law approach to define "controlled substance" within the definition of "drug trafficking offense" in U.S.S.G. § 2L1.2(b)(1)(A)(i)).

Contrary to that view, the Fourth, Seventh, Eighth, and Tenth Circuits have held that drugs regulated by state (but not federal) law are still controlled substances in this context. *United States v. Ward*, 972 F.3d 364, 372–74 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 651–54 (7th Cir. 2020); *United States v. Henderson*, 11 F.4th 713, 717–19 (8th Cir. 2021); *United States v. Jones*, 15 F.4th 1288, 1291–96 (10th Cir. 2021). We agree with those courts and hold that a "controlled substance" within the § 4B1.2(b) definition of "controlled substance offense" is one regulated by *either* federal or state law.

The phrase "controlled substance" is undefined by the Guidelines, so we begin with its ordinary meaning. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012). Dictionaries define a "controlled substance" as a drug regulated by law. *See, e.g.*, RANDOM HOUSE DICT. OF THE ENG. LANG. (2d ed. 1987) (defining controlled substance as "any of a category of behavior-altering or addictive drugs, such as heroin or cocaine, whose possession and use are restricted by law"). But as the District Court noted, this does not answer the question of *which* law must regulate the drug. *Lewis*, 2021 WL 3508810, at *8. The text answers that question. The definition of "controlled substance offense" in Guidelines § 4B1.2(b) explicitly includes offenses "under federal *or state* law" (emphasis added). Since state law can define the offense, it follows that it can also define what drugs are controlled substances. So a "controlled substance" under § 4B1.2(b) is one regulated under state or federal law.

The federal-law-only approach reads into § 4B1.2(b) a cross-reference to the CSA that isn't there. That Guideline does not define a "controlled substance offense" as one that prohibits certain conduct involving a "controlled substance as defined by 21 U.S.C. § 802." Tellingly, the Guidelines often do cross-reference the United States Code in that way. For example, the same Guideline that defines "controlled substance offense" defines "crime of violence" as "the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2); *see also* U.S.S.G. § 2D1.1 cmt. n.4 ("The statute and guideline also apply to 'counterfeit' substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed."); *cf.* 18

U.S.C. § 924(e)(2)(A)(ii) (defining "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))"). Unlike those examples, the Sentencing Commission did not cross-reference the CSA in defining "controlled substance offense" in § 4B1.2(b). *Cf. Portanova*, 961 F.3d at 257 ("Congress has demonstrated a command of limiting language that strictly refers only to conduct criminalized under federal law, and it could have employed it here if it so intended.").

Lewis's counterarguments, and the opinions he cites, are unpersuasive for five reasons.

*First*, the Second Circuit and Lewis rely too heavily on the rebuttable presumption that federal law does not turn on the vagaries of state law, derived from *Jerome v. United States*, 318 U.S. 101, 104 (1943). *See Townsend*, 897 F.3d at 71. Although we presume federal law is not "dependent on state law," we do so only absent a "plain indication to the contrary." *United States v. Pray*, 373 F.3d 358, 362 (3d Cir. 2004) (citation omitted). In this case, the § 4B1.2(b) definition of "controlled substance offense" expressly references state law. And the second part of the definition—that the offense is "punishable by imprisonment for a term exceeding one year," U.S.S.G. § 4B1.2(b)—is "dependent on state law" when the predicate offense is a state crime. *See Pray*, 373 F.3d at 362. State law determines whether its crimes are punishable by over one year in prison, and maximum sentences for certain crimes vary from state to state. *See, e.g.*, *McNeill v. United States*, 563 U.S. 816, 820 (2011). Because one portion of the definition contemplates state-law discrepancies, we see no reason to

10

apply the presumption against state law to another portion of that same definition.

*Second*, the categorical approach does not require, as Lewis and some courts have suggested, using a uniform drug schedule to define "controlled substance." *See Gomez-Alvarez*, 781 F.3d at 793; *Bautista*, 989 F.3d at 702. Because the categorical approach here requires us to interpret the criteria identified by the Guidelines, rather than to identify elements of a federal or generic crime, *see supra* Section III.A, we do not refer to a single drug schedule to determine whether a drug is a controlled substance.

*Third*, the sentencing goal of uniformity is illusory in this case. *See* U.S.S.G. ch. 1, pt. A, intro. cmt. 1.3; *Bautista*, 989 F.3d at 702. We acknowledge that our approach would treat differently two § 922(g) offenders who had previously trafficked hemp—one in a state where it was criminalized and another in a state where it was legal. But the federal-law-only approach would do likewise. A § 922(g) offender previously convicted of trafficking marijuana in a state where the federal and state drug schedules matched would be subject to an enhancement. But a defendant previously convicted for trafficking that same class of marijuana criminalized by federal law in a state that criminalized hemp (unlike federal law) would not be. Either way, uniformity is unattainable.[2]

---

[2] There is also good reason for the purported discrepancy created by our decision between the hypothetical hemp dealer in a state that did not criminalize hemp and the one in a state that did. Some culpability attaches to trafficking a controlled substance because the state criminalizes it. And recidivist

11

*Fourth*, the commentary to § 4B1.2, which lists a handful of federal crimes as examples of "controlled substance offenses," does not dictate a federal-law-only approach. *See* U.S.S.G. § 4B1.2 cmt. n.1. *But see Ward*, 972 F.3d at 382–83 (Gregory, C.J., concurring in the judgment). The examples include no state offenses even though many of them qualify as predicate offenses. And the commentary provides no run-of-the-mill examples. Instead, it tries to clarify borderline cases about what types of criminal *conduct* related to drug trafficking qualify as predicate offenses, such as *possessing a listed chemical or prohibited equipment* with intent to manufacture a controlled substance; *maintaining a place* for purpose of facilitating a drug offense; and *using a communication facility* in committing, causing, or facilitating a drug offense. U.S.S.G. § 4B1.2 cmt. n.1. So the commentary says nothing about which state-law drug offenses, or which state-regulated drugs, qualify.

*Finally*, we decline Lewis's invitation to apply the rule of lenity. That doctrine applies to the Guidelines, *United States v. Flemming*, 617 F.3d 252, 269–70 (3d Cir. 2010), but only where, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty." *United States v. Castleman*, 572 U.S. 157, 172–73 (2014) (citation omitted). For the reasons we have explained, the meaning of "controlled substance" is not so grievously ambiguous or uncertain as to implicate the rule of lenity.

---

enhancements, like § 2K2.1(a)(4)(A), are designed to increase sentences for defendants with a history of breaking the law. Even if the conduct were identical, one hypothetical hemp dealer would be a lawbreaker, while the other would not be.

To sum up, a "controlled substance" under § 4B1.2(b) of the United States Sentencing Guidelines is a drug regulated by either state or federal law. It is therefore irrelevant that the New Jersey statute under which Lewis was convicted defined "marijuana" more broadly than federal law.

C

Having determined that a drug regulated by state law qualifies as a "controlled substance" even if it is not also regulated by federal law, we turn to the question *when* the substance must be regulated by state law for the § 2K2.1(a)(4)(A) enhancement to apply. Does the date of the predicate state conviction apply or do we look to the date of federal sentencing? New Jersey removed regulated hemp from the definition of marijuana after Lewis's drug conviction but before his federal sentencing on the § 922(g)(1) offense. *See* N.J. Stat. Ann. §§ 2C:35-2, 4:28-6 *et seq.* Citing that change in the law, Lewis claims his prior conviction did not involve a "controlled substance," even as defined by New Jersey law.[3]

This question too has divided the courts of appeals. The First, Second, and Ninth Circuits have concluded that courts

---

[3] Although we address this timing question based on New Jersey's marijuana amendments, the issue would have been decisive under federal law because the CSA regulated hemp at the time of Lewis's predicate conviction, but not at the time of his federal sentencing. That said, the timing question is relevant based on our holding that state law applies only because the Government expressly waived the argument that if the CSA controls, the Court should look to the federal drug schedules at the time of the predicate conviction. *See Lewis*, 2021 WL 3508810, at *10 n.11.

13

must look to the drug schedules at the time of federal sentencing. *See United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021); *United States v. Gibson*, 55 F.4th 153, 159 (2d Cir. 2022); *Bautista*, 989 F.3d at 703. On the other hand, the Sixth Circuit has adopted a time-of-prior-conviction approach, *see United States v. Clark*, 46 F.4th 404, 406 (6th Cir. 2022), as has the Eighth Circuit in analogous circumstances, *see United States v. Doran*, 978 F.3d 1337, 1338, 1340 (8th Cir. 2020) (adopting a time-of-conviction approach where a state reduced marijuana possession to a misdemeanor, thus bringing it outside the definition of "controlled substance offense"), *cert. denied*, 141 S. Ct. 1507 (2021). We agree with the Sixth and Eighth Circuits.

We start with *McNeill v. United States*, 563 U.S. 816 (2011). *See Clark*, 46 F.4th at 409. There, the Supreme Court held that courts must look to the maximum sentence at the time of the predicate conviction—not at the time of federal sentencing—to determine whether a previous conviction was for a serious drug offense under the Armed Career Criminal Act. *McNeill*, 562 U.S. at 820. McNeill's prior drug convictions were punishable by the requisite ten years or more at the time of conviction, but the state had reduced the maximum sentence below that threshold by the time of his federal sentencing. *Id.* at 818. The Supreme Court concluded that the text of the statute, its context, and the absurd results that would otherwise result compelled a time-of-conviction approach. *Id.* at 819–23.

*McNeill* does not control Lewis's case because "longstanding principles of statutory interpretation allow different results under the Guidelines as opposed to under the ACCA." *United States v. Brown*, 47 F.4th 147, 154 (3d Cir. 2022). But its reasoning is persuasive. As the Sixth Circuit

14

explained when addressing the same timing question presented here:

> Both [the question in *McNeill* and that presented here] involve recidivism enhancements, which by nature concern a defendant's past conduct. In both cases, the defendant relied on an intervening change in state law (and here federal too) that ostensibly shifts the meaning of a provision that enhances their sentence. Both cases contemplate whether to define that term with reference to current law, or law from the time of the prior conviction.

*Clark*, 46 F.4th at 409. *McNeill* held that a state criminal statute that met the definition of a "serious drug offense" at the point of conviction, but was later amended before federal sentencing so the statute no longer met the definition, justified a penalty enhancement. *See* 563 U.S. at 820. So too here. Hemp was a "controlled substance" under New Jersey law at the time of Lewis's prior conviction, so possession with intent to distribute hemp was a "controlled substance offense" under the Guidelines. Just as later amendments to state law did not change the classification of the already-adjudicated offense in *McNeill*, deregulation of hemp does not reclassify Lewis's prior conviction as something other than possession with intent to distribute a controlled substance.

As in *McNeill*, a time-of-sentencing approach would yield absurd results. *See* 562 U.S. at 822–23. If we looked to the drug schedules in effect at the time of federal sentencing, any narrowing—even the elimination of one cannabis class or one cocaine isomer—would expunge prior offenses related to that drug for purposes of the enhancement. Doing so would

15

give a windfall to even the most serious drug traffickers and subvert, not vindicate, the Guidelines' intent to punish recidivists more severely than first-time offenders. Nor, for that matter, could state law retroactively gut federal law by tweaking drug schedules ever so slightly. *See id.* at 823 ("It cannot be correct that subsequent changes in state law can erase an earlier conviction for ACCA purposes."). Simply put, controlled substances include those regulated at the time of the predicate conviction.

Lewis rightly notes that *McNeill* "prescribe[s] only the time for analyzing the elements of the state offense," rather than the time for determining the elements of the federal or generic offense or other matching criteria. *Brown*, 47 F.4th at 154. But that qualifying language does not render *McNeill* less applicable here. Because we define "controlled substance" as a drug regulated by either state or federal law—rather than by reference to any specific drug table—it would strain credulity to suggest that Lewis's marijuana conviction was for anything but possession with intent to distribute a "controlled substance." If the marijuana Lewis possessed was *not* a drug regulated by law, how could he have been convicted? A controlled substance under the Guidelines need not be a drug *currently* regulated by law, and a state's decision to amend its drug schedules does not vitiate a prior "controlled substance offense." *See McNeill*, 563 U.S. at 823.

Courts of appeals that have adopted a time-of-sentencing approach also justify their decision to do so on the obligation to "use the Guidelines Manual in effect on the date that the defendant is sentenced," absent an ex post facto issue. U.S.S.G. § 1B1.11; *see Abdulaziz*, 998 F.3d at 523; *Bautista*, 989 F.3d at 703; *see also* 18 U.S.C. § 3553(a)(4). We adhere to that obligation as well. But the District Court's duty to apply

16

the Guidelines as they existed at the time of Lewis's federal sentencing sheds no light on what the applicable Guideline means by "controlled substance." Answering *that* question does not refer the sentencing judge to the then-current state drug schedules.

We also respectfully disagree with the Ninth Circuit's statement that "it would be illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded is not culpable and dangerous." *Bautista*, 989 F.3d at 703 (citation omitted); *see Gibson*, 55 F.4th at 162. First, that analysis conflicts with the Supreme Court's analysis in *McNeill*. Like the deregulation of a drug, the reduction of a maximum statutory sentence (as in *McNeill*) reflects a policy judgment that the underlying conduct is less culpable than the prior sentences indicated, but we still enforce the prior policy through the Guidelines enhancement or statutory penalty. Second, the Guidelines consistently enhance federal sentences when the offender has prior state convictions, many of which are for conduct not criminalized under federal law (*e.g.*, battery, rape, murder). Finally, it is logical to attach culpability to illegal conduct that is later decriminalized. Distributing hemp in New Jersey was criminal in 2012 and its decriminalization does not expunge convictions under the old regime or eliminate culpability for breaking the prior law. This does not, however, preclude the sentencing court from considering the change in the law to impose a just sentence. *See Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) (recognizing sentencing courts' "broad discretion to consider all relevant information").

Contrary to Lewis's argument, our holding today is not inconsistent with our opinion in *Brown*, which adopted a time-

17

of-federal-*offense* approach for determining whether a prior conviction was for a "serious drug offense" under ACCA. *See* 47 F.4th at 153. We discussed the Guidelines in *Brown* only in dicta, and we disavowed any connection between "the ACCA categorical analysis" there and the Guidelines issue here, stating we took "no view on the correctness of" *Abdulaziz* and *Bautista*. *Id.* at 153–54. Our reasoning in *Brown* also relied heavily on the federal saving statute, which is not at issue here. *See id.* at 151–52 (citing 1 U.S.C. § 109). Moreover, a "serious drug offense" under ACCA is defined as a CSA offense or a state-law offense involving a controlled substance *as defined by the CSA*. 18 U.S.C. § 924(e)(2)(A). When a predicate offense is defined by explicit cross-reference to the CSA (unlike here), it makes sense that amendments to federal drug schedules implicitly amend the corresponding Guidelines or statutory penalty provision.

IV

The meaning of "controlled substance" as used in Guidelines § 4B1.2(b)'s definition of "controlled substance offense" includes drugs regulated by state law at the time of the predicate state conviction, even if they are not federally regulated or are no longer regulated by the state at the time of the federal sentencing. Marijuana, including hemp, was regulated by New Jersey law at the time of Lewis's predicate state conviction, so the District Court erred in declining to apply the § 2K2.1(a)(4)(A) enhancement. We will vacate the District Court's judgment of sentence and remand for resentencing consistent with this opinion.