**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2590
_____

UNITED STATES OF AMERICA,

v.

DEON BLAIR
                    Appellant.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2:17-cr-00153-001)
District Judge:  Honorable David S. Cercone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 3, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion filed: March 4, 2026)

_____

OPINION*
_____

Montgomery-Reeves, *Circuit Judge*.

        Deon Blair files this pro se appeal of his criminal sentence.  Blair argues that he is

entitled to either a new trial or a reduced sentence because of a variety of errors that he

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

contends occurred throughout the criminal proceedings. For the reasons explained below, we disagree and will affirm the District Court's judgment.

## I.  BACKGROUND

On February 10, 2017, the Pittsburgh Police Department reported to the scene of an apparent drug overdose and found the victim deceased. At the scene, the officers observed both opened and unopened star-stamped baggies near the victim's body. Forensic testing revealed the presence of fentanyl and butyryl fentanyl (collectively, "fentanyl") in the star-stamped baggies. And a toxicology report later revealed that the victim had fentanyl in his system at his time of death.

The police department then began investigating the star-stamped baggies' origins. On February 13 and 15, 2017, the police department made two controlled purchases of heroin using a confidential informant who was friends with the victim by contacting the phone number of "E," the person who provided the drugs to the victim. During both controlled purchases, "E," who was later identified as Blair, provided the buyer with star-stamped baggies that resembled those recovered from the victim's residence. Forensic testing of the contents of the drugs from the two controlled purchases revealed that the February 13 purchase contained heroin and the February 15 purchase contained fentanyl. Detectives also obtained search and arrest warrants for Blair, and a search warrant for a residence associated with him. While executing the search and arrest warrants, officers recovered numerous unfilled star-stamped baggies, a .40 caliber pistol, two of Blair's Pennsylvania state-identification cards, and his cell phone. Blair was charged with various drug- and firearms-related crimes.

2

During the criminal proceedings, the District Court held three hearings relevant to this appeal. The first concerned Martin Dietz's motion to withdraw as counsel based on Blair's alleged threats toward Dietz. It denied the request and ordered that Blair be shackled during attorney-client meetings. The second concerned Blair's pro se letters requesting new counsel. It denied the request and ordered Dietz to continue with the representation. The third concerned Blair's waiver of his right to a jury trial. After Blair signed a written consent to a bench trial and engaged in a colloquy with the Court confirming that he understood his right to a jury trial and was choosing to waive it, the Court proceeded accordingly.

On July 26, 2021, the District Court held a one-day bench trial. The next day, the District Court issued its verdict, finding Blair guilty of all charged crimes. The District Court sentenced Blair to a term of life imprisonment on Count One, a term of 360 months imprisonment for each of Counts Two through Four, to run concurrently with the life sentence, and a term of 60 months imprisonment on Count Five, to run consecutively to the life sentence. Following sentencing, Blair's counsel filed motions to withdraw, which the court granted.

Blair then timely filed this pro se direct appeal of his conviction.

## II.    DISCUSSION[1]

Blair challenges his conviction and sentence in seven ways. He argues that (1) he had ineffective assistance of counsel because his counsel suffered from a disabling conflict;

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

(2) his jury trial waiver was ineffective because it was not knowing and intelligent; (3) he was not competent to waive his right to a jury trial; (4) he was unable to confront witnesses; (5) there was insufficient evidence to support his conviction; (6) the District Court erred in failing to recuse for bias; and (7) the District Court erred in calculating the Sentencing Guidelines. We address each argument in turn and explain why none persuades.

### A.      Ineffective Assistance of Counsel

"The Sixth Amendment guarantees a defendant the right to effective assistance of counsel, which includes 'a correlative right to representation that is free from conflicts of interest.'" *United States v. Savage*, 85 F.4th 102, 115–16 (3d Cir. 2023) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). Blair argues that his Sixth Amendment right to "conflict free counsel" was violated.[2] Opening Br. 18. But this type of conflict-of-interest argument is generally not cognizable on a direct appeal of a criminal proceeding; instead, we reserve ruling on these arguments until after a defendant files a motion under 28 U.S.C. § 2255.[3] *United States v. Senke*, 986 F.3d 300, 315 (3d Cir. 2021). "Under collateral review, ineffectiveness claims are litigated before the trial court, which is the 'forum best suited' for 'determining the adequacy of representation during an entire trial.'" *United*

---

[2] When citing to the Opening and Reply Briefs, we refer to the PDF page numbers instead of the page numbers that Blair includes at the bottom of the page.

[3]  In arguing that his right to counsel was violated, Blair seems to say that he and Dietz had an internal conflict in the form of personal issues or disagreements. *See* Opening Br. 17 (Blair "alleg[ed] multiple issues between counsel and himself . . . . [T]here is ample record evidence of an actual conflict."). We have previously held that a defendant may allege an actual conflict of interest where there was "breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Senke*, 986 F.3d 300, 309–10 (3d Cir. 2021) (internal citation and quotation marks omitted).

4

*States v. Perrin*, 149 F.4th 267, 286 (3d Cir. 2025) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). Accordingly, we abstain from reviewing Blair's claim at this stage to protect him from "having res judicata attach to the ineffective assistance claim" on an undeveloped record. *Gov't of V.I. v. Vanterpool*, 767 F.3d 157, 164 (3d Cir. 2014). We cannot grant Blair's relief on this claim as it is presently framed. *See Senke*, 986 F.3d at 315. We note that our disposition is without prejudice to Blair's ability to bring a claim under 28 U.S.C. § 2255.

### B. Waiver of the Right to a Jury Trial[4]

The Sixth Amendment guarantees the right to a trial by an impartial jury. U.S. CONST. AMEND. VI. Rule 23(a) of the Federal Rules of Criminal Procedure requires that a defendant waive a jury trial in writing, that the government consent, and that the court approve. And we encourage district courts to conduct a colloquy to "help[] insulate a jury-trial waiver from later attack by a defendant who claims he did not fully understand the nature of the right before he forfeited it." *United States v. Lilly*, 536 F.3d 190, 197 (3d Cir. 2008); *United States v. Anderson*, 704 F.2d 117, 118–19 (3d Cir. 1983). The purpose of such a colloquy is to, "[a]t a minimum," ascertain the defendant's knowledge about the size of the jury, his right to participate in jury selection, the unanimity-in-the-verdict requirement, and that a bench trial will result in the judge alone deciding guilt. *Lilly*, 536 F.3d at 198 (citing *United States v. Martin*, 704 F.4th 267, 274–75 (6th Cir. 1983).

---

[4] We review the effective waiver of a constitutional right de novo. *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995).

5

Blair argues that he did not knowingly and intelligently waive his right to a jury trial because he misunderstood the necessity of a unanimous verdict and what constitutes a hung jury. But the District Court explained and then clarified that a verdict must be unanimous and that, if the jury could not agree, a mistrial would result. Throughout the colloquy, the District Court repeatedly asked Blair to verbally confirm that he understood the right that he was waiving. Blair stated that he understood and wanted to waive his right to a jury trial despite those facts. Blair therefore knowingly and intelligently waived his right to a jury trial and the District Court did not commit reversible error.

## C.    Competency[5]

"Due process prohibits the conviction of a legally incompetent person." *United States v. Gillette*, 738 F.3d 63, 76 (3d Cir. 2013). As such, courts have an obligation to sua sponte conduct a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998). A "reasonable cause" exists if the defendant does not "(1) ha[ve] the capacity to assist in her or his own defense and (2) comprehend[] the nature and possible consequences of trial." *Gillette*, 738 F.3d at 76 (internal citations and quotation marks omitted).

---

[5] "We exercise plenary review over a district court's interpretation and application of the standards for determining competency, but we review for clear error a district court's decision not to hold a competency hearing." *United States v. Gillette*, 738 F.3d 63, 76 (3d Cir. 2013).

Blair argues that the record reflects good reason to question his competency.  For example, he points to an attorney-client communication from his attorney in 2018 that stated: "I am beginning to think that you are unable to aid in your own defense."  Opening Br. 13–14; Appendix (hereinafter "App.__") 6A.  But nothing submitted in the record on appeal demonstrates that the District Court was ever apprised of this concern.

Blair also argues that the District Court had reasonable cause to question his competency because it granted a request for psychological testing.[6]  But the motion raised no concerns about Blair's ability to assist in his defense; the request was made to "develop sentencing mitigation and to try to better understand and interact with Mr. Blair."  App. 4A.  As such, Blair has not established that the District Court had reasonable cause to question his competency.  Accordingly, the District Court did not commit reversible error by failing to hold a competency hearing or by accepting the jury waiver.

**D.      Right to Confront Witnesses**[7]

"Ordinarily, the Sixth Amendment's Confrontation Clause 'guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.'" *Pitts v. Mississippi*, 607 U.S. ----, No. 24-1159, 2025 WL 3260171, at \*1 (2025) (per curiam) (quoting

---

[6] Blair similarly cites to an authorization form stating that the evaluation was necessary "to ensure Client is competent and to better understand Client's mental illness(es) or personality disorders."  App. 6B.  But "mental illness does not, on its own, mean that a defendant is not competent to stand trial."  *United States v. Noble*, 42 F.4th 346, 353–54 (3d Cir. 2022).  The authorization form's brief reference to competency, with no further explanation, is not sufficient to show that Blair could not appreciate the charges against him or aid in his own defense.

*Coy v. Iowa*, 487 U.S. 1012, 1016 (1988)).  But "[a] defendant . . . can waive his right[]

to . . . confront his accusers, if he does so knowingly and voluntarily."  *United States v.*

*Yung*, 37 F.4th 70, 82 (3d Cir. 2022).  Counsel may waive a defendant's confrontation

rights on his behalf, so long as it is a legitimate trial tactic, and the defendant does not

dissent from the waiver.  *See United States v. Walters*, 151 F.4th 122, 129 (3d Cir. 2025)

(citing *United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980)).[8]

Here, counsel did just that.  And there is not even a suggestion that Blair disagreed

with the stipulation.  There was, therefore, no legal error when the District Court accepted

the stipulation where counsel waived Blair's confrontation rights with respect to the toxi-

cology reports.  Thus, the District Court did not commit reversible error by admitting the

stipulated evidence.

### E.      Sufficiency of the Evidence[9]

When analyzing whether there is sufficient evidence to support a conviction, "we

examine the totality of the evidence, both direct and circumstantial, and must credit all

available inferences in favor of the government."  *United States v. Sparrow*, 371 F.3d 851,

852 (3d Cir. 2004) (internal quotation marks and citation omitted).  We must affirm the

conviction if "any rational trier of fact could have found the essential elements of the crime

---

[8] Waiver "is an intentional and voluntary relinquishment of a known right." *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995).  "We decline to review waived arguments." *United States v. Brito*, 979 F.3d 185, 189 (3d Cir. 2020).  Here, when Blair stipulated to the exhibits being admitted without the chemists' testimony, he waived his right to confront those witnesses.

[9] We exercise plenary review over Blair's sufficiency challenge. *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009).

beyond a reasonable doubt." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (emphasis and internal quotation marks omitted). Blair argues that he is not guilty of Count One—distribution of butyryl fentanyl and fentanyl resulting in serious bodily injury and death in violation of 21 U.S.C. §§ 841(a)(1) &(b)(1)(C). To prove Count One, the government had to prove beyond a reasonable doubt that (1) Blair knowingly or intentionally distributed a controlled substance, (2) the controlled substance contained fentanyl or butyryl fentanyl, and (3) the controlled substance was the but-for cause of the victim's death. 21 U.S.C. §§ 841(a)(1) & 812; *Burrage v. United States*, 571 U.S. 204, 218–19 (2014).

Blair argues that the evidence was insufficient to conclude that the victim's death was caused by a substance that Blair distributed. We disagree. The toxicology report shows that the victim had a lethal amount of fentanyl in his system, which, alone or in conjunction with other drugs, was the but-for cause of his death. The evidence also establishes that on the day the victim died, he was in possession of star-stamped baggies that contained fentanyl. An eyewitness confirmed that the stamped baggies looked the same as those that were purchased that same day from Blair. Within a week of the victim's death, the police department made two controlled purchases from Blair and received several baggies bearing the same star stamp and the February 15 controlled purchase contained fentanyl. Crediting all inferences in the light most favorable to the prosecution, a reasonable factfinder could conclude, beyond a reasonable doubt, that the victim died from a fentanyl overdose and the fentanyl came from the star-stamped baggies that the victim purchased from Blair. Accordingly, the District Court did not commit reversible error when it returned the guilty verdict on Count One.

9

### F. Judicial Recusal[10]

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Blair argues that the District Court judge erred in not recusing himself from the case because his bias against Blair affected his ability to be impartial. This antagonism was reflected, Blair argues, in the District Court's order that Blair be restrained when meeting with counsel and in the District Court's statements promoting Dietz to a "general of the [c]ourt." Suppl. App. 179. But "opinions formed by the judge on the basis of facts introduced or events occurring in" the proceeding "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). And the District Court ordered Blair to be restrained when meeting with his counsel because his counsel reported that Blair threatened him, not because of deep-seated antagonism. *Id.* The same is true for the Court's remarks about Dietz. These were merely "assessments relevant to the case, whether they are correct or not." *United States v. Wecht*, 484 F.3d 194, 220 (3d Cir. 2007). "As such, they do not demonstrate bias, even if they are 'expressions of impatience, dissatisfaction, [or] annoyance.'" *Knoll v. City of Allentown*, 707 F.3d 406, 411 (3d Cir. 2013) (alterations in original) (quoting *Liteky*,

---

[10]When a party did not request that the district court judge recuse himself during proceedings in the district court, "we review a recusal argument made on appeal for plain error." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 166 (3d Cir. 2004). While Blair claims that he made a "pro se motion to recuse," Blair Br. 32, it is unclear what motion he is referring to as there is not one in the record before us. So we will review the District Court's lack of recusal for plain error.

510 U.S. at 555). Thus, the District Court judge did not commit reversible error when he continued to preside over Blair's case.

### G. The Career Offender Sentencing Enhancement[11]

Under the U.S. Sentencing Guidelines (the "Sentencing Guidelines"), a defendant is subject to certain sentencing enhancements if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Blair argues that he should be resentenced because his prior convictions under Pennsylvania's drug-trafficking statute, 35 Pa. Stat. Ann. § 780-113(a)(30), are not controlled substances offenses under the Sentencing Guidelines. But a conviction under § 780-113(a)(30) for possession of cocaine and heroin with intent to deliver "constitutes a 'controlled substance offense' under [the Sentencing Guidelines] § 4B1.2(b)(1)." *United States v. Hurtt*, 105 F.4th 520, 525 (3d Cir. 2024). And we have rejected the argument that Pennsylvania defines "cocaine" more broadly than federal law, "holding that, under § 4B1.2(b)(1), a controlled substance . . . is a drug regulated by either state or federal law." *Id.* at 525–26 (internal quotation marks omitted) (quoting *United States v. Lewis*, 58 F.4th 764, 771 (3d Cir. 2023)). Therefore, "whether Pennsylvania law defines 'cocaine' broader than federal law is 'irrelevant.'" *Id.* (quoting *Lewis*, 58 F.4th at 771). Accordingly, the District Court properly concluded that Blair's conviction under § 780-13(a)(30) for possession with intent

---

[11] "Whether a conviction constitutes a predicate career offender offense under the [Sentencing] Guidelines is a question of law subject to plenary review." *United States v. Womack*, 55 F.4th 219, 236 (3d Cir. 2022).

to deliver cocaine constituted a "controlled substances offense." And we will affirm the District Court's sentence.

### H. Prior State Drug Offenses and a Mandatory Life Sentence under 21 U.S.C. § 841(b)(1)(C)[12]

Section 841(b)(1)(C) states that if a person violates § 841(a) "after a prior conviction for a felony drug offense has become final" and "death or serious bodily injury results from the use of such substance," the defendant "shall be sentenced to life imprisonment." 21 U.S.C. § 841(b)(1)(C). Because a felony drug offense (in this context) is defined by reference to certain prohibited conduct, not by reference to a federal criminal statute, the inquiry is whether the elements of Blair's prior convictions meet 21 U.S.C. § 802(44)'s definition of a felony drug offense.

A "felony drug offense" is defined as: "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct," in relevant part, "relating to narcotic drugs." 21 U.S.C. § 802(44). Here, Blair had nine relevant convictions that were punishable by imprisonment for over one year for possession with intent to distribute cocaine, and possession with intent to deliver heroin. The Pennsylvania statute that Blair was convicted of violating, 35 Pa. Cons. Stat. § 780-113 (a)(30), prohibits the "manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." A statute prohibiting the possession with intent to distribute controlled substances, including cocaine

---

[12] Whether Blair's prior convictions were qualifying felony drug offenses under 21 U.S.C. § 841(b)(1)(C) is a legal question subject to plenary review. *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016).

and heroin, prohibits conduct related to narcotic drugs. The District Court therefore properly found that Blair's prior convictions were felony drug offenses triggering a mandatory life sentence under 21 U.S.C. § 841(b)(1)(C).

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.